In the Matter of Supplementary Proceedings for the Collection of a
Tax of L. ADLER BROTHERS AND COMPANY, Appellant.

JOHN B. HAMILTON, as Treasurer of Monroe County, Respondent.

*Tax in city of Rochester — omission of the words "or corporation" from the asses-*
*sors' oath — the basis of assessment of a corporation is its capital and surplus —*
*presumption that it was so assessed — failure to deliver to the assessors a statement*
*of its financial condition — mandamus to compel the furnishing of such state-*
*ment — neglect to appear on grievance day — wrong rate of interest specified in the*
*warrant.*

Under section 83 of the charter of the city of Rochester (Laws of 1880, chap.
14, as amd. by Laws of 1897, chap. 181) requiring the city assessors to affix
to the assessment roll of the taxable personal estate their oath "that the
assessment-roll contains a true statement of the aggregate amount of the tax-
able personal estate of each and every person or corporation named in such
roll" the omission from the oath of the words "or corporation" is not a sub-
stantial and material deviation and does not render the assessment void,
especially when it appears that the oath, with the words in question omitted
therefrom, conforms literally to that required by the General Tax Law (Laws
of 1896, chap. 908, § 37) to be attached to assessment rolls prepared pursuant
to that statute.

Section 12 of the General Tax Law, which provides that the shares of stock in
corporations shall be assessed at their actual value, supersedes that provision
of section 31 thereof which provides that the assessment shall be based upon
the nominal capital paid in and secured to be paid in together with surplus
profits; consequently, the basis for the assessment of a corporation is its capital
and surplus computed at their actual value.

An assessment of a corporation, appearing upon the assessment roll of the city
of Rochester under the heading "valuation of personal property," should not
be declared invalid upon the ground that the corporation was assessed upon
its personal property instead of upon its capital and surplus, where it appears
that the corporation did not deliver to the assessors the written statement
showing the status of its property as required by section 27 of the Tax Law,
and that the assessors were for that reason obliged to procure the necessary
information as best they could.

In such a case it will be presumed that the assessors, from the best information
available to them, ascertained the value of the capital and surplus of the cor-
poration to be the sum stated in the assessment roll.

*Semble*, that the assessors had no power to institute a mandamus proceeding to
compel the corporation to deliver to them the written statement required by
section 27 of the Tax Law.

A corporation assessed upon its capital and surplus which fails to appear before
the assessors on grievance day or to institute certiorari proceedings to review
the determination of the assessors, as authorized by section 250 *et seq.* of the

General Tax Law, and remains quiescent until supplementary proceedings for the collection of the tax are instituted nearly three years after the making of the assessment, will not be permitted to attack the validity of the assessment in the supplementary proceedings.

Where the rate of interest prescribed by the statute (Laws of 1880, chap. 14, § 119) is five per cent and twelve per cent per annum from the fifteenth day of April, that being the day the warrant for the collection of unpaid taxes is directed to be issued, the fact that the warrant for the collection of the corporation's unpaid taxes directed the collection of the unpaid taxes with interest at six per cent does not invalidate the warrant when it appears that the ordinary practice was followed in the form of the warrant, and that if the taxes had been collected in the usual way pursuant thereto the sum collected would not have exceeded the amount legally due, and also that the corporation found no fault with the warrant nor with the rate of interest charged, but declined to pay upon the ground that the tax was excessive.

APPEAL by L. Adler Brothers and Company, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 7th day of August, 1902, denying a motion to vacate an order theretofore entered in the proceeding requiring the treasurer of L. Adler Brothers and Company to appear before a referee and be examined concerning the property of said corporation pursuant to section 259 of the Tax Law.

The county treasurer of the county of Monroe, with the view of collecting a tax against the appellant, obtained an order in supplementary proceedings pursuant to the General Tax Law (Laws of 1896, chap. 908, § 259) requiring the officers of the appellant to appear before a referee designated in the order and be examined concerning the property of the said corporation. An order was thereafter granted by a justice of the Supreme Court requiring the county treasurer to show cause at a Special Term of the Supreme Court why the order in supplementary proceedings should not be vacated. The order to show cause was founded upon the affidavit of the attorney for the appellant, setting forth certain alleged errors and defects in the assessment, which it is claimed rendered it void, and also attacking the manner of the attempted enforcement of the tax based upon the assessment. The court at Special Term declined to vacate the order.

*Isaac Adler*, for the appellant.

*William De Graff* and *J. Warrant Castleman*, for the respondent.

SPRING, J.:

The counsel for the appellant adverts to several errors in the roll which it is contended render the assessment invalid, and we will discuss them separately.

*First.* The oath of the assessors in verification of their work does not conform strictly to that prescribed, and for that reason the appellant urges the assessment is void. The form of the oath is prescribed by the city charter (Laws of 1880, chap. 14, § 83), as amended by chapter 181, Laws of 1897. It is there provided that the oath shall state " that the assessment-roll contains a true statement of the aggregate amount of the taxable personal estate of each and every person or corporation named in such roll." The oath attached to the roll in question omits the words " or corporation." It thus conforms to that required by the General Tax Law of the State. (Laws of 1896, chap. 908, § 37.)

A correct copy of the assessment roll made by the city assessors is to be delivered to the supervisors of the several wards respectively to be by them presented to the board of supervisors of the county and is made the basis of the assessment for the general tax. (Charter, §§ 83, 116.) No other assessment is made for that purpose. We have, therefore, an oath conforming literally to that prescribed by the General Tax Law and attached to a roll in assessing for general taxation, and yet it is claimed to be invalid because in one particular it fails to follow the oath enjoined upon the city assessors. Unquestionably the oath directed in the city charter is the one to be adopted, and any substantial departure from the one formulated in it would nullify the assessment, but that deviation must be substantial and material to warrant any such decision and especially in view of the circumstance alluded to that it complied with the oath essential to be attached to a roll prepared pursuant to the General Tax Law and for which purpose this was used.

It must be obvious that the term " or corporation " is not of especial significance in the oath of the assessors. The method of assessment for general purposes in the State, counties and towns is identical with that for local purposes or improvements in the city of Rochester. It will not be pretended that a roll which omits the assessment of the personal estate of the corporations of a county or of a town is a fair or legal assessment. Nor will it stand the test

if the oath attached to it is fairly susceptible of the construction that the roll does not contain a "true statement of the aggregate amount of the taxable personal estate of each and every * * * corporation" within the taxing district. Yet, if the expression "or corporation" is an essential ingredient of the oath of the city assessors, we are logically driven to the deduction that the oath accompanying the roll under the General Tax Law is flagrantly defective and personal property of corporations may be purposely omitted therefrom, or may be unequally assessed, and the assessors would not be indictable for perjury as their oath does not include in its compass corporate property.

If the contention of the appellant is tenable, then property belonging to a joint stock association may be omitted from the roll and not be within the verification made by the assessors.

It has become nearly an axiom that the word "person" is sufficiently elastic and comprehensive to include a corporation whenever that construction is reasonable and fairly intended. (Stat. Const. Law [Laws of 1892, chap. 677], § 5.)

That is especially true in construing taxing statutes. In *People ex rel. Cornell S. Co. v. Dederick* (161 N. Y. 195,) the court had up for review this precise point with reference to the extension of the word "persons," in section 37 of the General Tax Law, to include corporations and it was held to mean them. The court say (at p. 205): "Under the Statutory Construction Law (§ 5) 'The term person includes a corporation and a joint stock association.' Considering sections 21 and 37 of the Tax Law in connection with this provision of the Statutory Construction Law, we are required to construe the word 'person' as mentioned in those sections as also meaning corporations. This construction was evidently intended by the Legislature for only one form of oath is prescribed for assessors in completing their rolls, and in that oath the term 'persons' is used, and we cannot believe that it was intended to leave the assessment of corporations without any verification by the assessors."

*Second.* The second ground urged by the appellant is that the assessment is invalid by reason of the fact that the corporation was assessed for its personal property instead of upon its capital stock as required by sections 12 and 31 of the Tax Law (Laws of 1896, chap. 908). Upon the roll the appellant under Adler Brothers and

under the list headed "valuation of personal property" is assessed $100,000 and the tax is carried out at $446.28. In elucidation of this assessment Mr. Pond, one of the assessors, in his affidavit states that the appellant did not deliver to the assessors the written statement showing the status of its property as required by section 27 of the Tax Law. In the absence of this statement the assessors made their valuation of $100,000 from other sources available to them, including the annual report rendered by the corporation and on file in the office of the county clerk.

The appellant having neglected to furnish the statement referred to, the assessors were authorized to acquire whatever knowledge they might elsewhere. The delinquency of the corporation made that duty incumbent upon them. (*People ex rel. Manhattan Fire Ins. Co.* v. *Commrs.*, 76 N. Y. 64, 75; *People ex rel. Sodus Bay & S. R. R. Co.* v. *Cheetham*, 45 Hun, 6.) They of course could not be expected to permit the corporation to escape taxation. Its annual report for 1899 gave but little light as to the condition of its affairs. It did not give any clue to the amount of its "surplus profits or reserve funds" nor the amount of its debts or assets. The report for the year 1900 was still more misleading. It placed the capital stock at $760,000, "debts not to exceed" that sum and "assets at least $760,000." No report was produced for earlier years and none was consequently available to the assessors. These reports were not made to enlighten. They furnished as scant information as was possible and still come within the definition of annual reports. The assessors thereupon put down the sum of $100,000, and whether they intended this to be the assessment of the capital stock or of the personal property does not appear. The fact that it was under the heading "valuation of personal property" is not decisive. (*Niagara Elevating Company* v. *McNamara*, 50 N. Y. 653.) They were unable to conform to section 31 in detail in making this assessment for they lacked the essential data because of the failure of the appellant. All they could do, therefore, was to assess at a fixed sum, trusting to its modification on grievance day if erroneous or unsatisfactory to the taxpayer.

Section 12 of the General Tax Law requires that the shares of stock in corporations shall be assessed at actual value. Section 31 provides for the assessment of the nominal capital paid in and

secured to be paid in together with surplus profits and is consequently inconsistent with the form prescribed in section 12. One assessment is based upon actual value and the other the capital stock, ignoring value. The same inconsistency existed in the former statutes, but the courts held the one prescribing the actual value of the stock superseded the other and that construction was recognized as the settled law. (*People ex rel. Twenty-third St. R. R. Co.* v. *Commrs. of Taxes of New York*, 95 N. Y. 554; *People ex rel. Union Trust Co.* v. *Coleman*, 126 id. 433.)

A similar construction has been adopted to eliminate the contrary methods in sections 12 and 31 of the General Tax Law. (*People ex rel. Cornell S. Co.* v. *Dederick*, 161 N. Y. 195, 206 *et seq.*)

Consequently, the basis of the assessment is the company's capital with the surplus, and that must be assessed at its actual value. It is to be noted that the assessors learned, as the record shows, that the appellant did not own any real estate, so that the provisions of section 31 as to the deductions to be made and the mode of assessing property of that kind are not applicable. It is fair to presume, therefore, that the assessors from the best information available ascertained the value of the capital stock and surplus of the appellant, which in reality is its property, and determined the same to be $100,000. We must assume that the assessors were cognizant of the law and were endeavoring to follow it in the best way possible, and for aught we know the assessment upon the roll is a substantial compliance with the spirit of the statute.

It is asserted by the counsel for the appellant that the assessors were armed with the power to compel the delivery of a written statement by mandamus. The statute (§ 28) gives no such remedy. If it exists at all it must be by virtue of the inherent power in the board of assessors. The statute fixes a penalty to be visited upon the corporation for neglect to furnish this statement and that is the limit of its punishment. In any event there was no obligation upon the assessors to resort to the uncertain and extraordinary remedy of mandamus. The ordinary assessors would be chary about doing that.

We think, however, there is still another answer to this attack upon the validity of the assessment. The assessors had jurisdiction of the corporation. Its place of business was in Rochester. Its annual reports were filed in the county of Monroe. Its capital

stock was, therefore, properly assessable by the assessors of that city. Whatever errors there may have been in the assessment were not jurisdictional but related to the procedure.

The requisite notice of the completion of the roll was given and the review day for the hearing of complaints designated. Section 36 of the General Tax Law and section 83 of the charter (*supra*) provide for the presentation of complaints on grievance day. The appellant did not appear at that time and the assessors assumed that the assessment was satisfactory to it. The statute is clear and precise in defining the remedies available to one dissatisfied with his assessment. He may appear before the assessors and they must give him a fair hearing. If he still feels aggrieved he may have the determination of the assessors reviewed by certiorari. (General Tax Law, § 250 *et seq.*)

If he fails to avail himself of that remedy he may not impeach the validity of the assessment in another and collateral proceeding. (*People ex rel. Cochrane* v. *Feitner*, 44 App. Div. 239.)

In *United States Trust Co.* v. *Mayor, etc., of New York* (144 N. Y. 488) the court, in discussing the several provisions of chapter 269, Laws of 1880, and for which the present Tax Law is, in a measure, a substitute, say (at p. 493): "It is necessary for the protection of the taxing officers that an attack upon their action should be limited to that which is direct and in the nature of an appeal from it, where that action has been with jurisdiction; and the irresistible inference seems to be that when the Legislature has created a system of procedure for the review and correction of assessments, as it has by the act of 1880, it was intended to be an exclusive one."

This assessment was completed and the grievance day had in 1899, and for nearly three years the corporation has remained acquiescent, confirming this assessment by its long delay. (*People ex rel. Mutual Union Tel. Co.* v. *Commrs. of Taxes*, 99 N. Y. 254.)

The counsel for the appellant in his brief refers to a large number of cases wherein title to land or property was endeavored to be acquired by tax title. A stringent rule prevails in a case of that kind, and the holder of the tax deed must show a strict compliance with the requirements of the statute both as to the assessment and the sale following the non-payment of the tax. (*Thompson* v. *Burhans*, 61 N. Y. 52, 65; *Matter of Veith*, 165 id. 204.)

The holder of the tax deed obtains his conveyance for a small sum and the courts of necessity are driven to exacting a somewhat technical adherence to the taxing statutes by him before permitting the owner by descent or purchase to be divested of his title and dispossessed of his premises.

The facts in this case make it the easier for us to hold the company strictly to its statutory remedy. Its officers were in fault in neglecting to furnish the assessors the information necessary to make a more acceptable assessment than appears upon the roll. The assessors acted from the best lights they had. The appellant was derelict and unmindful of its rights in failing to make its complaints to the assessors on their review day. For nearly three years they have allowed the assessment to remain unquestioned and only sought to assail it when the enforcement of the tax was imminent. Even now it presents no tangible suggestion that the assessment is excessive or that it is unequal or unfair in any particular. If it ever had reasonable ground for complaint, it has long since overrun its last day of grace.

*Third.* The remaining ground urged by the learned counsel for the appellant does not pertain to the assessment but to the validity of the warrant upon which the order which it is sought to vacate is founded.

The appellant not having paid its tax on the 15th of April, 1900, the county treasurer issued his warrant to a collector to collect it with interest at six per cent. The rate of interest prescribed by section 119 of chapter 14 of the Laws of 1880, which is controlling, is an additional amount of five per cent and also twelve per cent per annum from the said fifteenth day of April, which is the day the warrant is to be issued by the provisions of the statute. The reason assigned for the variance from the statute is found in the affidavit of the treasurer, and it shows the ordinary practice was followed in the form of this warrant. According to his affidavit, if the tax had been collected in the usual way pursuant to the warrant, the amount collected would not have exceeded what was legally due. The variance, therefore, was more formal than real.

The collector presented the warrant to the officers of the appellant and they declined to pay because the tax was excessive. They found no fault with the warrant nor with the rate of interest charged.

They did not in fact pay anything or tender the amount due or any other sum, and no levy was made upon their property. Had they offered to pay the exact sum with five per cent interest, probably it would have been a defense against a proceeding to enforce collection for a larger sum. Beyond that the warrant was returned "for want of personal property out of which to collect the same," as required by the statute, and that makes the basis for the order in proceedings supplementary to execution. (General Tax Law, § 259.)

In the cases cited upon the brief of the appellant's counsel the collector had made a levy and was attempting to enforce payment for more than the statutory rate. In the present case no more can now be collected than the statute authorizes.

The order should be affirmed, with ten dollars costs and the disbursements of this appeal.

McLENNAN, WILLIAMS, HISCOCK and DAVY, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.