(90 App. Div. 397.)

## DONOVAN v. CITY OF OSWEGO.

(Supreme Court, Appellate Division, Fourth Department. January 19, 1904.)

1. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—ASSESSMENTS—REVIEW—
REMEDIES.

Where an assessment for municipal improvements is alleged to be void on the ground that the assessors did not possess jurisdiction to make the assessment as they did, and the legality of the assessment can be proved only by extrinsic evidence, an objector is entitled to review the assessment by a suit in equity, and is not limited to relief obtainable on writ of certiorari.

2. SAME—FRONT-FOOT RULE.

Where the makers of an assessment for municipal improvements were bound to make the assessment according to benefits, and in their discretion determined that each square of property abutting the improvement would derive an equal benefit from the construction thereof, and therefore laid the assessment according to the front-foot rule, the assessment so levied was not erroneous, in the absence of proof that it was unequal, and not according to benefits.

3. SAME—ASSESSMENT OF OTHER PROPERTY.

Where assessors for street improvements determined that each square of land abutting the improvement derived an equal benefit from the construction thereof, and therefore assessed the property by the front-foot rule, the fact that one block abutting the improvement, by reason of improvements thereon, was worth much more than another block, which was vacant, and would therefore receive a proportionate enhancement in value from the construction of the improvement greater than the less valuable tract, did not of itself establish that the assessment was unequal.

4. SAME—VALUE OF PROPERTY—INCREASE.

Where assessors for street improvements levied the assessment by the front-foot rule, evidence, in an action by an abutting owner to set the assessment aside, that the value of his lot was not increased by the improvement for which it was assessed, did not show that the principle adopted for laying the assessment was invalid.

5. SAME—ESTIMATED COST—CONTINGENT EXPENSES.

Under a city charter providing that, where there is an excess of assessments collected for a street improvement, such excess shall be returned ratably to those from whom it was collected, the fact that the estimated cost of a street improvement included a 5 per cent. contingent fund, which was not itemized, did not render the assessment invalid.

6. SAME — CITY CHARTER — AMENDMENTS — LOCAL IMPROVEMENTS — PROPERTY
OWNERS—CONSENT.

Where, prior to the making of a street improvement, a provision of the city charter prohibiting the common council from ordering an improvement, the cost of which should exceed $10,000, except on the consent of a majority of the property owners liable to assessment therefor, was amended so that it was not applicable where the cost was to be defrayed from money raised or to be raised by virtue of a special election, the consent of property owners was not required where that portion of an assessment for street improvements to be paid from the highway fund of the city was to be paid from a special fund, voted at a special election, to be raised each year for three successive years, to be used for street improvements.

7. SAME—WATER AND GAS CONNECTIONS.

Oswego City Charter, §§ 130, 140, 320, subd. 2 (Laws 1895, p. 621, c. 394, as amended by Laws 1897, p. 235, c. 263), vested the control of streets, and of the ordering of public improvements, and the apportion-

---

¶ 2. See Municipal Corporations, vol. 36, Cent. Dig. §§ 1113, 1114.

ment of the expenses thereof, in the department of works. The common council was authorized, in levying a local assessment for street paving, to include all curbing or other structures incident to such paving and laid at the same time. *Held*, that such sections authorized the city to require abutting property owners to put in lateral water, gas, and sewer connections from the pipes laid in the street to the edge of their property, or to pay for such connections made by the city, before the laying of pavement on the street.

8. SAME—NOTICE OF IMPROVEMENT—SUBSIDIARY WORKS.

A notice of intention to order the paving of a street, required to be published preliminary to the making of the improvement by Oswego City Charter, § 141 (Laws 1895, p. 621, c. 394, as amended by Laws 1897, p. 235, c. 263), was not objectionable for failure to include notice of the making of lateral water, gas, and sewer connections with abutting property before the street was paved, such connections being merely subsidiary and incidental to the paving.

9. SAME—GAS AND WATER CONNECTIONS—CONSTRUCTION—CONSENT OF ABUTTING OWNERS.

Oswego City Charter, § 44 (Laws 1895, p. 621, c. 394), providing that the common council shall not grant permission to any person or corporation to lay gas or water mains in the streets without the legal consent in writing of at least one-half of the abutting owners, did not prevent the city from requiring the laying of lateral connections with water and gas mains already in a street to the edge of the abutting property, as a preliminary to paving the street, without the consent of abutting owners.

Appeal from Special Term, Oswego County.

Action by Dennis Donovan against the city of Oswego for the vacation of certain special assessments for street improvement. From a judgment in favor of plaintiff (79 N. Y. Supp. 562), defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Elisha B. Powell, for appellant.
Spencer Brownell, for respondent.

SPRING, J. This is an action in equity to vacate an assessment levied upon property of the plaintiff located on the south side of East Bridge street, in the city of Oswego. One entire assessment is for $18,482.91 for the construction of an asphalt pavement on that street, and the other, of $2,310.97, for putting in water and gas connections and lateral sewers. The assessment levied against the property of the plaintiff was $1,700, and the pavement taxes thereon $589.91. Plaintiff's lot has 100 feet frontage. The westerly 25 feet has upon it a cheap building, but the remaining 75 feet is a vacant lot used as a wood yard.

It is unnecessary to enter into a minute analysis of the various sections of the city charter (chapter 394, p. 621, Laws 1895, amended chapter 263, p. 235, Laws 1897) which are applicable. It is sufficient to note that the initial steps for the paving of a street or the making of any local improvement thereon are lodged with the department of works. Section 140, charter. The plan requires public notice of the improvement contemplated, and the hearing of any objections which may be presented. Section 141. In its determina-

tion the department determines what proportion of the cost of the improvement is to be raised by local assessment, and what part, not exceeding one-half, is to be paid from the highway fund. Section 140. The common council, upon this determination, orders the improvement to be made by the department of works, and the assessment to be made by the local assessors. Section 142, and also subdivision 4 of section 312. Section 320, in further defining the powers of the department of works, provides in subdivision 2:

"To determine, by a resolution to be entered in the minutes of the proceedings of said department, what portion if any, of the expense of making any sewer or sewers, pavement or curbing, shall be paid by the city at large, and what part or portion thereof shall be defrayed by local assessment upon such portions of the real estate in said city as the board of local assessors shall deem more immediately benefited thereby."

The assessment is to be "apportioned as equitably as may be," which general direction seems to be the only requirement in that regard. Ample provision is also made for the hearing of objections by the assessors upon the review of their assessment, and appeal may be taken from their decision to the common council.

On the 23d day of February, 1898, the department of works gave notice of an intention to construct a pavement on East Bridge street from First to Ninth streets, a distance of about 2,500 feet. The estimated cost of the improvement was apportioned as follows: $18,-482.91 to be assessed upon the property benefited, $9,807.60 from the highway fund, $5,241.99 to be paid by the street railway company, and there was a $15 charge for the cost of advertising. The proceedings culminated in a resolution of the common council, April 25, 1898, directing the department of works to make the improvements and ordered the necessary assessment to be laid. Upon the review day the plaintiff appeared and objected to his assessment, and his objections and those made by others interested were heard and considered by the board of assessors. The assessment was laid and the improvements made, and the property of the plaintiff subsequently sold to pay the taxes levied against it, upon the failure of the plaintiff to pay the same. The mode of assessment adopted was by the front foot, each bordering lot being subjected to the same front-foot assessment.

At the outset it is contended that the action to remove the cloud on the plaintiff's title is a collateral attack upon the assessment, and is not permissible. The rule is a salutary one that where assessors are charged with making an unequal assessment the review of their action should be by certiorari. The determination of the question does not then, in any event, utterly invalidate the entire assessment, but a reassessment may be ordered by the court, and no substantial injury may result to the municipality. If, however, the board of assessors did not possess the jurisdiction to make the assessment, or if the improvement resulting in the tax levy is without authority of law or upon an entirely wrong principle, the remedy may be by action, if extrinsic evidence is essential to establish its legality. Alvord v. City of Syracuse, 163 N. Y. 158, 57 N. E. 310; County of Monroe v. City of Rochester, 154 N. Y. 570–579, 49 N. E. 139.

In the present case it appears, as already noted, that the method of assessment resorted to by the board of assessors was a uniform rate per front foot of the abutting premises. If the plan was erroneous in principle the vice extended to the whole assessment, rendering it invalid, and the plaintiff or any taxpayer charged with the payment of a tax could attack it, as has been done in the present case, by an action in equity. If a taxpayer claims that his property is unequally assessed compared with those of his neighbors or of other owners of property within the taxing district, the remedy to relieve him from the disproportionate assessment is by certiorari. Matter of Adler Bros. & Co., 76 App. Div. 571, 576 et seq., 78 N. Y. Supp. 690 (affirmed on opinion below, 174 N. Y. 287, 66 N. E. 929). The whole assessment is not vitiated by the unequal assessment in that case. Here the vice, if any there be, pervades the whole assessment, for if the position taken is tenable the mode chosen was erroneous.

But was the rule adopted erroneous? It was not wholly by an arbitrary criterion, for the assessors examined the situation, taking into consideration the buildings and existing conditions, and determined that the assessment by uniform foot frontage was the most equitable of any which could be chosen. They acted judicially in this determination (O'Reilley v. City of Kingston, 114 N. Y. 439, 448, 21 N. E. 1004), and their decision will not be disturbed unless it is apparent that the principle adopted was incorrect and unfair to the property owners. The bare fact the assessment was apportioned among the abutting owners according to the lineal foot frontage of their several lots does not by any means establish the method chosen was erroneous (case last cited). In People ex rel. Scott v. Pitt, 169 N. Y. 521, 62 N. E. 662, 58 L. R. A. 372, the Legislature fixed the assessment for the construction of sewers in the city of New Rochelle at a definite sum per front foot. The court, in passing upon the validity of this requirement, uses this language at page 528, 169 N. Y., page 665, 62 N. E., 58 L. R. A. 372:

"Hence the principle adopted in this case of distributing the burden according to frontage at a fixed sum for each linear foot of sewer constructed was a valid exercise of power, not prohibited by any constitutional provision or any legal principle applicable to taxation for local improvements. Some other principle might, indeed, operate more fairly upon some particular individual; but upon the whole the rule adopted by the Legislature in the charter was perhaps as fair as any other that could be devised. It has one decided merit that perhaps any other rule would not have, and that is that every property owner is required to pay only according to the extent of his possessions, and all are on a basis of equality. It may be that the sewer was a greater benefit to one than to another, but objections of this character could be made whatever principle was adopted. The principle of distributing the cost of a local improvement, or some part of it, upon property located upon the street, where the improvement is made according to the frontage of lots, or upon the basis of a specified sum per linear foot, is within the power and discretion of the Legislature, and so long as the burden is less than the actual cost of the improvement in front of the lot the property owner has no just cause to complain."

The keynote of every such assessment is that it must be made according to the benefits conferred. The assessment, upon any hypothesis, can never be computed with exact equality and fairness. The discretion and good judgment of the assessors who view the

property must ordinarily be controlling as to the justice of the assessment made.

The pavement in question extended along East Bridge street from the heart of the city to East Ninth street, nearly half a mile. The property at First street was more valuable than that at the other end of the pavement. For instance, the block on the south side of said street, between First and East Second streets, with a frontage of 200 feet, was assessed upon the general assessment roll at $68,000. The block on the same side of East Bridge street, between East Eighth and East Ninth streets, with a like frontage, and which included the land of the plaintiff, was assessed upon the same roll at $3,000. Each of these blocks was chargeable with about the same sum for the cost of the improvement on East Bridge street. It does not follow, however, there was any injustice in this apportionment. The assessors concluded that each square would derive an equal benefit from the construction of the pavement. The vacant lot might be rendered the more accessible, with a greater probability of being brought into the market as salable property, by reason of the improvement. We cannot say that because one block is worth, by reason of the buildings upon it, 20 times more than another block, it will receive the same proportionate enhancement in value from the construction of the pavement as the less valuable tract. This pavement was all on one street, and the assessors could readily take into cognizance the comparative effect its construction would have upon each bordering lot. The plaintiff gave proof tending to show that the value of the lot had not increased by the laying of the pavement. That is no satisfactory standard to aid us in determining whether the assessors adopted an erroneous principle or not. Their judgment may not be sustained by subsequent events. Other circumstances and conditions may enter into the question affecting the value of plaintiff's premises. We are inclined, therefore, to think the court below erred in determining that this assessment was invalid by reason of the plan adopted by the assessors in making the assessment.

Some of the other objections urged to the validity of the assessment we will briefly advert to. In the estimated cost of the improvement was included a 5 per cent. contingent fund of $1,596.98, and it is contended that this addition was unwarranted. This item was intended to meet reasonable and incidental expenses which would inevitably arise in the construction of the improvement and which it was difficult to itemize. Had the officers made an estimate of these various items which in their judgment composed this gross sum, if fairly made, it could not be claimed that the assessment was vitiated thereby. Nor do we think that is the effect now, especially in view of the provision of section 256 of the charter, which requires "the excess shall be returned ratably to those from whom it was collected."

In 1896, in accordance with the charter, the taxpayers at a special election voted that $10,000 be raised each year for three successive years, and added to the highway fund, to be exclusively used in making local improvements of a permanent nature. The resolutions voted upon further provided that any "unexpended balance of said ten thousand ($10,000) dollars remaining in either of said three years may

be expended in any following year for the same purpose and subject to the same conditions and limitations as if expended in the fiscal year in which the same was raised." The city's contribution of $9,807.60 was ordered paid from this fund, and, as already noted, such payment must come from the highway fund. At the time the resolution was adopted the charter (section 258) prohibited the common council from ordering a local improvement the cost of which should exceed $10,000 except upon the consent of a majority of the property owners liable to assessment therefor. It is claimed the present assessment is violative of that provision. Before any preliminary steps had been taken looking towards the paving of East Bridge street, this section had been amended so that it was not applicable to a local improvement the cost whereof is "to be defrayed from moneys raised or to be raised by virtue of a special election." Under this act the consents were unnecessary.

There is no question over the amount of the money which was chargeable to the city for its proportion of the cost of this pavement. It is of little concern to the plaintiff from what fund the money was paid. The other objections urged by the respondent to the validity of the assessment we do not deem it necessary to discuss separately. Suffice it to say we think the charter provisions were fairly complied with.

The plaintiff was assessed upon local assessment roll No. 77 for water and gas connections and lateral sewers $75.50, and it is claimed this assessment is illegal. A water company owned a plant in said city whose line extended along under the surface of East Bridge street at the time said pavement was put in, and that is equally true of a gas line. In order to make the connections with these lines before the pavement was laid, the municipal authorities notified the owners to make them, and advised such owners that the same would be made by the city, and the expense thereof charged to each owner benefited, unless done by him within the time specified in the notice. The plaintiff did not comply with the notice, and the connections were thereafter made under the direction of the city by the company which constructed the pavement, and a local assessment roll was prepared conforming to the requirements of the charter, and the plaintiff's tax thereon was $75.50.

It is contended there is no specific warrant in the charter for making these gas and water connections. The control of the streets and of their improvement, and of the ordering of public improvements, and of the apportionment of the expenses thereof, are vested in the department of works. Sections 130, 140, 320, sub. 2. The common council, in levying a local assessment for paving a street, may include therein "all curbing or other structures incident to such paving and laid at the same time therewith." Connections of this kind are evidently incidental to the construction of the pavement, and the necessity or wisdom for making them before the pavement is laid is obvious. Otherwise the pavement must be torn up and its usefulness seriously impaired every time an abutting owner desires to connect his premises with the water or gas line in the street.

Section 141 of the charter, as already noted, requires the depart-

ment of works to give public notice of its intention to order any local improvement. This notice is not to be accompanied with any statement of expense, nor are the details of the proposed improvement up for consideration, but the propriety of making it at all, and the hearing of the abutting owners preliminarily, are the reasons for this requirement. The notice was published, and the plaintiff appeared and objected to the improvement intended. The notice said nothing as to making gas and water connections, nor do we deem it necessary, for they were subsidiary to the laying of the pavement, and unless that was ordered the necessity for the incidental expenditures would not arise.

On March 7th following the department of works in due form ordered the pavement made, including "all necessary connections with sewer, gas, and water mains in any of said streets; all in accordance with specifications on file in the office of the city engineer." The required advertisement of this determination was published, and the date of the hearing fixed for March 14th, at which time several parties appeared and were heard. In all the proceedings subsequent these connections were included as part of the improvement to be made. In the resolution accepting the bid for the construction of the pavement in accordance with the specifications adopted by the defendant, the city engineer and superintendent of works were "directed to prepare estimates of the cost of the said local improvements * * * according to the terms of said specifications for pavement proposed to be laid, * * * and all necessary curbing, catch basins, connections, headers, and all necessary connections with sewers, gas and water mains, at any of said streets, showing separately the estimated cost of that part of said pavements lying with the lines of street intersections." This excerpt is a type of those appearing in each of the resolutions and notices pertaining to this improvement. The plaintiff had full knowledge that these connections were to be made, and objected thereto. The second fifth finding of the court in its decision contains the following: "That all of said connections were placed in front of plaintiff's property, against his objection, with the exception of one water connection." The certificate of the cost of these improvements was presented to the common council, with the request of the department of works that the common council authorize the making of the local assessments therefor upon the property benefited, which was done. The plaintiff appeared before the assessors, and objected to the assessment against him, and appealed to the common council from the adverse decision, and that decision was affirmed. The proceedings from the outset seem to have been carried on pursuant to the charter, and the plaintiff had all the notice to which he was entitled, and apparently availed himself of it to oppose the putting in of the improvements.

The court below held, and it is now strenuously urged, that section 44 of the charter applies to these gas and water connections. That section, so far as material, reads:

"The common council shall not have power, and is hereby forbidden to grant permission to any person, company or corporation to lay or place in, upon or under or incumber in any manner, any of the streets * * * with

* * * gas or water mains or pipes * * * without and until the legal consent in writing, duly acknowledged of at least one-half of the owners of abutting property, shall first have been obtained and filed with the city clerk."

The consents of the abutting owners to the making of these connections were not obtained. No permission was granted in this case to any corporation to lay mains in the streets. The mains were already laid, and the department of works, and then the common council, ordered the company putting in the pavement to make these connections upon the refusal of the owners to do so. They were already provided for in the estimates and specifications, and the municipal authorities, in their discretion, deemed it feasible that they should be made before the completion of the pavement. As a practical measure the authorities knew the connections would ultimately be made with the abutting premises, and they determined, as they might, where each connection should be placed, and directed it to be made. It was never intended that the common council must defer the ordering of these connections with a line already laid until the abutting owners consented thereto. Again, the legal consent of "at least one-half of the owners" is made a prerequisite by the section referred to. It was of no importance to the plaintiff whether his neighbor had these connections or was without them. The value or usefulness of his premises was not affected thereby. The section implies that there is a common interest among the abutting owners where the improvement is to be made which must be preceded by the consent of a certain number of the owners. It does not apply where the effect of the improvement is distinct and separate in its bearing upon each owner's premises. The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event upon questions of law only, the facts having been examined, and no error found therein. All concur.