become payable to her in the event of the death of Frederick M. Sheldon during that time, yet such right to its possession was not exclusive. Frederick M. Sheldon was entitled to the possession thereof during the same period, in so far as the policy secured to him the right to demand such insurance moneys at the expiration of the 40 years. The only evidence of the claim of Frederick M. Sheldon to such insurance moneys, in the event that he should survive that period, was the policy itself. It was the muniment of his title; and while such delivery of the policy did place in plaintiff's physical possession the evidence of her claim to the insurance moneys payable to her in the event of the death of Frederick M. Sheldon during the 40 years, it also at the same time was an actual or symbolic delivery by Frederick M. Sheldon to the plaintiff of his claim to the insurance moneys in the event that he survived that period.

The conclusion is reached that Frederick M. Sheldon in 1872 made a valid and effectual gift to the plaintiff of all moneys that accrued to him in 1906. Such fact made the general assignment in 1893 by Frederick M. Sheldon to W. Chalmers Peebles for the benefit of creditors ineffectual as a conveyance of the policy or any interest therein, and the defendant by or through such assignment obtained no title to the insurance moneys accruing July 24, 1906. The fact that Frederick M. Sheldon in 1896 executed a formal written assignment of the policy of insurance to the plaintiff, and the fact that the plaintiff, in presenting her claim to the insurance company in 1906 for the moneys agreed to be paid to Frederick M. Sheldon, referred to the written assignment of 1896 as her title thereto, do not impeach or destroy her title acquired in 1872.

The plaintiff is entitled to the moneys paid into court. Judgment is accordingly ordered, with costs. Let findings be prepared.

---

NEW YORK CENT. & H. R. R. CO. et al. v. CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. May, 1910.)

1. MUNICIPAL CORPORATIONS (§ 513*)—STREET IMPROVEMENTS—ASSESSMENTS—REVIEW—REMEDY.

A suit in equity to cancel an assessment on land for a street improvement is in the nature of a suit to remove a cloud on title, and only attacks the assessment in so far as it affects the property owned by plaintiff, and there can be no reassessment against other property benefited, on the court setting aside the assessment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1188–1206; Dec. Dig. § 513.*]

2. MUNICIPAL CORPORATIONS (§ 512*)—STREET IMPROVEMENTS—ASSESSMENTS—REVIEW—REMEDY.

As a general rule, certiorari, and not a suit in equity, is the proper remedy to correct erroneous assessments for municipal improvements, unless the assessment is spread without jurisdiction to make the same, or is spread on an erroneous principle.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1185; Dec. Dig. § 512.*]

3. MUNICIPAL CORPORATIONS (§ 512*)—STREET IMPROVEMENTS—ASSESSMENTS—
   REVIEW—REMEDY.

   Under Buffalo City Charter, §§ 100, 101, 145, 158, providing for assessment of benefits for local improvements, authorizing certiorari to review an assessment, and declaring that, in an action to determine the legality of an assessment, no relief shall be granted for defects which could have been corrected on certiorari; and whether a given parcel is benefited, as well as the extent of the benefit, must be determined by the board of assessors as matters of fact, and certiorari is the only proper remedy to review errors in either case.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1185; Dec. Dig. § 512.*]

Action by the New York Central & Hudson River Railroad Company and another against the City of Buffalo. Demurrer to complaint sustained, with leave to serve an amended complaint.

Alfred L. Becker, for plaintiffs.
Herbert A. Hickman, for defendant.

WHEELER, J. The action is brought to vacate and have canceled an assessment for grading West Shore avenue, in the city of Buffalo, between Bailey and Wood avenues. The complaint alleges that the West Shore Railroad Company is the owner of the 100 feet frontage on the east side of Bailey avenue, and that the amount assessed thereon is the sum of $229.95; that the New York Central & Hudson River Railroad Company has an interest in the land assessed, as lessee thereof, and as such pays all taxes and assessment upon same in pursuance of its lease. The complaint further alleges that the land in question is used solely by the plaintiffs for the purpose of a right of way for a steam railroad, and is permanently devoted and dedicated to such public use; that said land is not and will not be in any way benefited by said improvement, and it will not enhance the market value thereof, but, on the contrary, diminishes the same by bringing into close proximity to the lands of the plaintiffs, used for such railroad, persons on foot and driving horses, and intending trespassers upon the property of the plaintiffs. The plaintiffs therefore allege that the said assessment is wholly illegal and void, and the board of assessors was wholly without jurisdiction to levy the same, and demand judgment that said assessment be adjudged null and void, and canceled, and the city and its officers and agents be restrained from collecting same.

The city of Buffalo demurs, on the ground that the complaint fails to state a cause of action. The real ground of the demurrer is the claim on the part of the city that the plaintiffs cannot maintain an action in equity to cancel the assessment, but that their remedy is by certiorari to review the proceeding of the city.

Section 145 of the charter of the city of Buffalo, relating to assessments for local improvements, provides:

"The board shall assess the whole amount ordered to be assessed upon the parcels of land benefited by the work, act or improvement, in proportion to such benefit, except in those cases in which, by this act, the assessment is to be made upon a different principle, and in those cases it shall make the assessment upon the principle prescribed in each case by this act."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Section 101 of the charter provides that:

"A writ of certiorari may be granted to review and determine the legality of an assessment for local improvements by any court of competent jurisdiction upon the application of any person or persons aggrieved thereby."

And it further provides that the procedure upon such application shall conform to the proceedings prescribed by the Code of Civil Procedure. The section gives the court the power, upon the hearing and determination of the certiorari, to order the assessment roll corrected or amended, or order the roll returned to the common council to amend or correct, pursuant to law.

Section 158 of the charter provides:

"In all cases where the common council shall have power to order an assessment, and such assessment shall finally be declared void by reason of any irregularities or defects occurring after such order, in an action or proceeding brought to determine the legality of the same, the board of assessors shall forthwith proceed to make a new assessment for the work or improvement," etc.

Section 100 provides that:

"An action may be brought in any court having jurisdiction thereof to determine the legality of an assessment for local improvements, and in such action the owner of a separate parcel of land may unite with one or more of the owners of other parcels assessed or attempted to be assessed, in the same assessment roll. * * * But in such an action no relief shall be granted to the plaintiffs based upon any defects, irregularities or errors in the said assessment roll which could have been reviewed and corrected by a writ of certiorari issued pursuant to the next section."

The determination of the question whether an action in .equity can be maintained to set aside the assessment against the plaintiffs' property is of great importance to the city. Such an action is in the nature of an action to remove a cloud upon title, and only attacks the assessment in so far as it affects the property owned by the plaintiffs. If the assessment, so far as it affects the plaintiffs' property, is set aside in this action, the amount of the assessment against the property will be lost to the city, for there is no provision for a reassessment of the amount against other property benefited.

The courts, therefore, naturally favor that form of legal proceeding or action which will preserve the rights of the city and do equity to all parties, and of such a nature that, if an assessment has been unevenly or unjustly spread, will permit of a correction of the error by a new assessment. It is therefore generally held that certiorari, and not an action in equity, is the proper remedy to correct erroneous assessments, unless the assessment is spread without jurisdiction to make the same, or is spread upon an erroneous principle. Doubtless, for the reasons above stated, the charter of the city of Buffalo expressly provided that in an action in equity to vacate an assessment:

"No relief shall be granted to the plaintiff based upon any defects, irregularities or errors in the said assessment roll which could have been reviewed or corrected by a writ of certiorari."

The simple question, therefore, to be determined, is whether the alleged errors of the board of assessors in assessing the plaintiffs for the improvements in question could have been reviewed by certiorari.

If the alleged errors were subject of review by certiorari, then this action cannot be maintained.

The charter makes it the duty of the board of assessors to spread an assessment for local improvement "upon the parcels of land benefited by the work, act or improvement, in proportion to such benefit." Section 145. Thus is the board of officials charged with the duty of determining whether a certain parcel of land is benefited at all, and to what extent. It is held that official action of this character is peculiarly the subject of review by certiorari, and not by action.

In the case of Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747, an action was brought in equity to set aside a local assessment on the ground that it was grossly in excess of the proportionate benefits. The court held that the action could not be maintained, for the reason that the question of benefit was, by the charter, one within the jurisdiction of the board of assessors, and their decision on that point could only be reviewed by writ of certiorari. The court said:

"Upon the subject of local assessments the defendant's charter provided that the common council should estimate and fix the amount, that the assessments be made by the board of assessors, and that they should assess the whole amount upon the parcels of land benefited by the improvement in proportion to such benefit. * * * The plaintiff's case rests mainly upon the alleged fact that the assessment on his land was largely in excess of its proportionate benefit derived from the improvement. Evidence was given tending to prove the fact, and the trial court so found, and, further, that the assessment upon the plaintiff's land was largely in excess of the benefit derived by it from the work, and that the assessment was not made upon the parcels of land benefited in proportion to such benefit. While it may be that relief upon that state of facts may have been given upon a direct review by certiorari of the assessment, it is difficult to see how they can furnish any support for collateral attack of it by action. The statute seems to have devolved upon the assessors of the defendant the duty and power of determining the district benefited by a local improvement and of making the proportional assessment upon the respective parcels of land. Those matters are left to the judgment of the board of assessors; and 'it shall be presumed that every * * * assessment made * * * is valid and regular, and that all steps and proceedings required by law were taken and had until the contrary shall be made to appear.' Id. tit. 7, § 36.

"This, upon the evidence and findings, was a case of overassessment on the plaintiff's land. If this was the result of mere error in judgment of the assessors, it is not the subject of what was formerly known as a bill of review; and, like the determination by any tribunal of matters brought within its jurisdiction, their judgment is not the subject of review by action collaterally. It is urged that, in view of the large excess in the amount of the assessment upon the plaintiff's land over its due proportion, it must be assumed that the assessors proceeded on some erroneous principle or rule in making it. If the evidence would have justified the inference to that effect in the court below, it did not as matter of law require such conclusion, and therefore the question is not here for consideration. While the excess may be so greatly out of proportion as to permit the inference of corrupt purpose or of adoption of an erroneous rule of estimate, the matter of excess is one of degree only; and if in one case an assessment having the support of jurisdiction of the assessors and of presumption of regularity may, upon the evidence of witnesses to the effect that it was disproportionately made upon the lands, be vacated in a collateral action, the question would be an open one in every case, where some one or more of the persons whose lands are subjected to assessment deem themselves aggrieved for such cause. It is for the Legislature to provide such means for direct review of the discretionary or judicial power of municipal officers in making assessments and levying taxes as may be deemed essential to the protection of the rights of the property owner. The rule is

fundamental that equality in the imposition of the burden of taxation is of the very essence of the right, and consequently the failure to observe that principle in a statute providing for assessments and their apportionment as applied to the property benefited would render it invalid. While this perfection must be in the law under which the assessors proceed, the execution of it, dependent upon their judgment, may not be free from criticism, although made in good faith."

It is contended, however, that by the allegations of the complaint it appears that the improvement in question conferred no benefit whatever upon the plaintiffs' property, and that this circumstance differentiates this case from one of overassessment. Whether a given parcel is benefited at all, as well as the extent of the benefit, are each questions of fact to be determined by the board of assessors, and it is difficult to see the force of the contention that in one case error by the assessors may be reviewed by action and in the other by certiorari. We think no such distinction exists. If the assessors can determine how much a parcel is benefited, it follows they must also determine whether the property is benefited at all. In spreading every assessment for a local improvement, the board of assessors necessarily must determine that some property is benefited and some not, and this authority to pass upon these questions is derived from the same section of the charter. The determination of each question is more or less involved in the determination of the other.

Certiorari is, in our opinion, the only proper remedy to review errors in either case. As was said in the case of Donovan v. City of Oswego, 90 App. Div. 397, 86 N. Y. Supp. 155:

"The rule is a salutary one that, where assessors are charged with making an unequal assessment, the review of their action should be by certiorari. The determination of the question does not then in any event utterly invalidate the entire assessment; but a reassessment may be ordered by the court, and no substantial injury may result to the municipality. If, however, the board of assessors did not possess the jurisdiction to make the assessment, or if the improvement resulting in the tax levy is without authority of law, or upon an entirely wrong principle, the remedy may be by action, if extrinsic evidence is essential to establish its legality. Alvord v. City of Syracuse, 163 N. Y. 158, 57 N. E. 310; County of Monroe v. City of Rochester, 154 N. Y. 570, 579, 49 N. E. 139. In the present case it appears, as already noted, that the method of assessment resorted to by the board of assessors was a uniform rate per front foot of the abutting premises. If the plan was erroneous in principle, the vice extended to the whole assessment, rendering it invalid, and the plaintiff, or any taxpayer charged with the payment of a tax, could attack it, as has been done in the present case, by an action in equity. If a taxpayer claims that his property is unequally assessed, compared with those of his neighbors or of other owners of property within the taxing district, the remedy to relieve him from the disproportionate assessment is by certiorari. Matter of Adler Bros. & Co., 76 App. Div. 571, 576, 78 N. Y. Supp. 690 et seq., affirmed 174 N. Y. 287, 66 N. E. 929. The whole assessment is not vitiated by the unequal assessment in that case. Here the vice, if any there be, pervades the whole assessment; for, if the position taken is tenable, the mode chosen was erroneous."

The plaintiffs' counsel, to support his contention that this action will lie, cites the case of Providence Retreat v. City of Buffalo, 29 App. Div. 160, 51 N. Y. Supp. 654. In that case it appeared that the land of the plaintiff, although assessed for a sewer, was not benefited at all by its construction, and was so situated that it was entirely

isolated from the district benefited; and the learned justice writing the opinion said the assessors proceeded upon wrong principles and exceeded their jurisdiction. A study of the opinion, however, discloses that the real ground for sustaining an action in equity to set aside the assessment in that case was the fact that the board of assessors delegated their powers to spread an assessment to subordinates in their office, and failed to exercise the powers conferred in trust on them as a board.

In view of the various decisions of the Court of Appeals, we cannot regard the case of Providence Retreat v. City of Buffalo as controlling in this case. The defendant's demurrer is therefore sustained, with costs, with the usual permission to serve an amended complaint.

So ordered.